IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Thomas Lee Pelzer, | ) Case No. 8:10-cv-2484-MBS-JDA |
| | ) |
| Plaintiff, | ) **REPORT AND RECOMMENDATION** |
| | ) **OF MAGISTRATE JUDGE** |
| v. | ) |
| | ) |
| Michael McCall; Miriam Cocciolone; Florence Mauney; John Ozmint; Stephen Claytor; D. Bush; Rhonda Abston; Captain Tinch; Charles Williams; Lt. Hunter; Vernon Miller; Lt. Conwell; Lt. Bennett; Lt. Harouff; Lt. Scottland; Lt. Byrd, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

This matter is before the Court on Defendants' motion for summary judgment. [Doc. 55.] Plaintiff, a prisoner proceeding pro se, brought this civil rights action under 42 U.S.C. § 1983. [Doc. 1.] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

Plaintiff filed this action on September 23, 2010, generally alleging violations of his First and Fifth Amendment rights for failing to process grievances and requiring SMU inmates to be restrained with three and a half pairs of handcuffs, a lead chain, and leg irons when exiting their cells. [Doc. 1.] Plaintiff amended his Complaint on December 28, 2010 to add additional defendants and claims of violations of his Eighth and Fourteenth Amendment rights. [Doc 23.] On May 20, 2011, Defendants filed a motion for summary judgment. [Doc. 55.] On June 24, 2011, Plaintiff filed a response in opposition to

Defendants' motion for summary judgment. [Doc. 58.] Defendants' motion is now ripe for review.

## BACKGROUND

At all times relevant to this action, Plaintiff was in the custody of the South Carolina Department of Corrections ("SCDC") and housed at Perry Correctional Institution ("PCI") in the Special Management Unit ("SMU").[1] [*See* Doc. 1 at 2; Doc. 23 at 2.] Plaintiff complains he was being improperly restrained as a Level 1 inmate, in handcuffs and shackles, even though he was never a Level 1 inmate and was never similarly restrained at other SCDC facilities. [*Id.* at 4–5 ¶¶ 4–7.] Plaintiff alleges SCDC Policy/Procedure OP-22.12 requires Level 1 inmates to be restrained with leg irons and security cuffs/belly chains whenever exiting their cells; at a minimum, inmates in Level 2 are restrained with security cuffs whenever exiting their cells. [*Id.* at 4 ¶ 3.] Plaintiff further alleges "every inmate at P.C.I. on it's SMU is wrapped in 3 and a half pairs of hand cuffs, lead chain and shackles when ever they exit their cell regardless if they are level one, two, or three." [*Id.* at 5 ¶ 8.] Plaintiff alleges he filed numerous grievances, which were denied or returned unprocessed. [*Id.* at 5–6 ¶¶ 9–11.]

With respect to his allegations against Defendants, Plaintiff alleges Defendant Miriam Cocciolone ("Cocciolone")[2] violated Plaintiff's First Amendment right to seek redress of certain grievances when she dismissed a second grievance as duplicative of a pending grievance. [*Id.* at 6 ¶ 12.] Plaintiff alleges Defendants D. Bush ("Bush"), Rhonda Abston

---

[1] Plaintiff was released in November 2011. [*See* Doc. 60 (notice of change of address to a private address).]

[2] Defendants indicate Cocciolone is now Miriam Snyder. [Doc. 55-1 at 7; Doc. 55-3.] For purposes of this Report and Recommendation, the Court will refer to this Defendant as Cocciolone.

("Abston"), Captain Tinch ("Tinch"), Charles Williams ("Williams"), Lt. Hunter ("Hunter"), Lt. Conwell ("Conwell"), Lt. Bennett ("Bennett"), Lt. Harouff ("Harouff"), Lt. Scottland ("Scottland"), Lt. Byrd ("Byrd"), Florence Mauney ("Mauney"), and Michael McCall ("McCall") violated Plaintiff's Fourteenth Amendment right to equal protection because Plaintiff was treated differently than other similarly situated inmates at other Level 3 prisons within SCDC and that the Warden's explanation that these procedures are necessary to maintain the safety and security of the public, staff, and agency is "arbitrary." [*Id.* at 6–7 ¶ 13.] Plaintiff alleges all Defendants, except Defendant John Ozmint ("Ozmint") and Cocciolone, violated Plaintiff's Fifth and Fourteenth Amendment rights by subjecting him to atypical and significant hardship by treating him differently than inmates at other facilities. [*Id.* at 7 ¶ 14.] Plaintiff further alleges all Defendants, except Ozmint and Cocciolone, subjected Plaintiff to cruel and unusual punishment in violation of his Eighth Amendment rights. [*Id.* at 8 ¶ 15.] Plaintiff alleges Ozmint violated Plaintiff's Fifth and Fourteenth Amendment rights by failing to train SCDC employees at PCI and failing to provide adequate SCDC employees. [*Id.* ¶ 16.] Additionally, Plaintiff alleges McCall's actions, or inactions, are the result of deficient training. [*Id.*]

Plaintiff seeks nominal damages against each Defendant in the amount of $15,000; punitive damages against each Defendant in the amount of $20,000; compensatory damages against each Defendant in the amount of $25,000; a permanent injunction requiring "SMU inmates at P.C.I. be restrained according to their levels and as required by SCDC Policy OP-22.12 at Paragraph 11"; an injunction requiring Ozmint to properly train McCall and the SMU staff at PCI; a jury trial; Plaintiff's costs of the suit; and any additional relief the Court deems proper. [*Id.* at 9 ¶¶ 19–23.]

3

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

*Generally*

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution

4

>and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

>reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is

5

responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

### *Exhaustion of Administrative Remedies in Prisoner Cases*

The Prison Litigation Reform Act ("PLRA") requires prisoners[3] to exhaust administrative remedies before filing a § 1983 action concerning their confinement. 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

A prisoner's failure to exhaust administrative remedies is an affirmative defense that must be properly raised by the defendant. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005); *see also Jones v. Bock*, 549 U.S. 199, 216 (2007). Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones*, 549 U.S. at 218. However, as the United States Supreme Court has emphasized, a prisoner can exhaust only those administrative remedies that are available to him.

---

[3] The PLRA defines a "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h).

*Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards."); 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . until such administrative remedies as are *available* are exhausted." (emphasis added)).

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at

252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

Defendants argue they are entitled to qualified immunity because their conduct did not violate any clearly established rights of which a reasonable government official would

have known.[4]  [Doc. 55-1 at 8–9.]  Specifically, Defendants contend Plaintiff cannot cite to any authority that holds an inmate has a constitutional right to be restrained in a certain manner, and SCDC policy provides for only a minimum level of restraint and allows discretion.  [*See id.* at 8.]  For the reasons explained below, the Court agrees Defendants are entitled to qualified immunity.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right.  *Id.*  Further, qualified immunity is "an immunity from suit rather than a mere defense to liability."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

---

[4] To the extent Plaintiff brings this suit against Defendants in their official capacities, Defendants are entitled to immunity pursuant to the Eleventh Amendment from Plaintiff's claims for monetary damages.  The Eleventh Amendment prohibits federal courts from entertaining an action against a state.  *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890).  Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted).  Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983.  *Id.*  As a result, to the extent Plaintiff has alleged claims for monetary damages against Defendants in their official capacities, those claims must be dismissed because Defendants in their official capacities are entitled to immunity pursuant to the Eleventh Amendment.  However, to the extent Plaintiff seeks prospective injunctive relief, his official capacity claims are not barred by the Eleventh Amendment; in such a circumstance, Defendants are persons under 42 U.S.C. § 1983, and Plaintiff's official-capacity action for prospective relief is not treated as an action against the State.  *See Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[] and . . . whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the

normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

Here, Plaintiff alleges Defendants violated his First, Fifth, Eighth, and Fourteenth Amendment rights by over-restraining Plaintiff when he exited his cell and failing to process a grievance. Accordingly, to determine whether Defendants are entitled to qualified immunity, the Court must determine whether Defendants acted with objective reasonableness in restraining Plaintiff and declining to process his second grievance with respect to the allegedly unlawful restraints.[5]

---

[5] Because Plaintiff alleges separate claims against Cocciolone and Ozmint, the Court addresses those claims separately, and the remaining discussion infra addresses Plaintiff's claims against Bush, Abston, Tinch, Williams, Hunter, Conwell, Bennett, Harouff, Scottland, Byrd, Mauney, and McCall, collectively referred to infra as "Defendants."  As to Cocciolone, Plaintiff alleges Cocciolone violated Plaintiff's First Amendment right to seek redress of certain grievances which she dismissed a second grievance as duplicative of a pending grievance. [Doc. 23 at 6 ¶ 12.]  Specifically, Plaintiff alleges Cocciolone returned unprocessed Grievance 1562-09, stating the "issue of restraints used in SMU is being addressed in Grievance 1561-09," a prior grievance regarding the use of excessive handcuffs and lead chain filed by Plaintiff. [*Id.* at 5 ¶¶ 9–10.]  Plaintiff received a final agency decision on Grievance 1561-09. [*Id.* at 5–6 ¶ 11; Doc. 1-1 (Grievances 1561-09 and 1562-09); *see also* Docs. 55-4, 55-5 (same).]

First, there is no constitutional right to a grievance procedure. *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137–38 (1977).  Even if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action.  *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state.").  Therefore, Plaintiff does not have a § 1983 cause of action based on his allegations that Cocciolone failed to process Plaintiff's grievance regarding the use of shackles.

Second, Defendants contend, and Plaintiff does not deny, that Plaintiff's grievance regarding the use of restraints was fully addressed through the earlier-filed grievance. [Doc. 55-3 ¶ 6.]  Accordingly, the Court concludes Cocciolone acted with objective reasonableness in refusing to process Plaintiff's second grievance and recommends Defendants' motion for summary judgment be granted as to Plaintiff's First Amendment claim.

As to Ozmint, Plaintiff alleges Ozmint violated Plaintiff's Fifth and Fourteenth Amendment rights by failing to train SCDC employees at PCI and failing to provide adequate SCDC employees. [*Id.* ¶ 16.]  Liberally construing Plaintiff's Complaint, the Court finds Plaintiff's claims against Ozmint assert claims of supervisory liability.  Because there is no doctrine of respondeat superior in § 1983 claims, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978), defendants are liable in their individual capacities only for their personal wrongdoing or supervisory actions that violated constitutional norms, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).  A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that

11

**Due Process Claim**

The Due Process Clause states, "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. IV, § 1.[6] As the Supreme Court has stated, with respect to inmates' state-created liberty interests,

> [W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin v. Conner*, 515 U.S. 472, 483–84 (1995) (internal citations omitted). Thus, whether a state has created a liberty interest to be free from a certain type of restraint depends on the nature of the restraint rather than the wording of the relevant regulation. *See id.* at 481–84.

---

> the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* (citations omitted). Here, assuming without deciding Plaintiff could prove Ozmint knew about the restraint practices at PCI, Ozmint is entitled to qualified immunity because it was objectively reasonable for Ozmint to conclude that his subordinates were not engaged in conduct that posed an unreasonable risk of constitutional injury to Plaintiff. The relevant SCDC policy provides that, at a *minimum*, Level 2 inmates will be restrained with security cuffs whenever exiting their cell [Doc. 1 at 3 ¶ 4; Doc. 23 at 4 ¶ 3; Doc. 55-2 ¶ 2], which leaves prison administrators with the discretion to determine the appropriate restraints for Level 2 inmates whenever exiting their cells. Therefore, the Court finds it was objectively reasonable for Ozmint to conclude his subordinates' method of restraining SMU inmates at PCI was within constitutional limits, and the Court recommends Defendants' motion for summary judgment be granted as to Plaintiff's claims against Ozmint.

[6] Although Plaintiff alleges a due process claim arising under the Fifth and Fourteenth Amendments, Plaintiff's claim is properly analyzed as a claim pursuant only to the Due Process Clause of the Fourteenth Amendment, which applies to the states, because Plaintiff has alleged claims only against state officials. *See* U.S. Const. amend. IV, § 1 ("No *State* shall . . . ." (emphasis added)).

In *Sandin*, where the restraint at issue was disciplinary segregation, the Supreme Court determined the restraint did not impose atypical and significant hardship because

> (1) the disciplinary segregation mirrored conditions of other forms of completely discretionary confinement;
>
> (2) based on a comparison between inmates inside and outside disciplinary segregation, the state's action in placing the defendant in segregation did not significantly disrupt the defendant's environment;
>
> (3) the state action did not affect the duration of the defendant's sentence.

*McLamb v. Dugger*, 78 F.3d 579, 1996 WL 84479, at *3 (4th Cir. 1996) (unpublished table decision) (citing *Sandin*, 515 U.S. at 485–87).  Applying the substance of the Supreme Court's rationale in *Sandin* to this case, the Court concludes Defendants are entitled to qualified immunity because it was objectively reasonable for Defendants to determine the method in which they restrained Plaintiff when he was outside his SMU cell did not impose an atypical and significant hardship on Plaintiff.  First, the method of restraint, which was largely discretionary [see Doc. 1 at 3 ¶ 4; Doc. 23 at 4 ¶ 3; Doc. 55-2 ¶ 2], mirrored the form of restraint used for all SMU inmates; all SMU inmates were restrained in the same manner within the dorm, all Level 2 inmates were restrained in the same manner outside the dorm, and all Level 1 inmates were more restrained outside the dorm [Doc. 55-2 ¶¶ 4–7].  Second, the method of restraint did not significantly disrupt Plaintiff's environment; Plaintiff was housed in SMU, where the inmates are highly restricted, and Plaintiff was restrained by the same method used for all Level 2 inmates.  Third, as common sense suggests, nothing in the record indicates Defendants' actions affected the duration of Plaintiff's sentence.  Accordingly, the Court concludes Defendants are entitled to qualified immunity

with respect to Plaintiff's due process claim and recommends Defendants' motion for summary judgment be granted as to this claim.

**Cruel and Unusual Punishment Claim**

The Eighth Amendment protection against cruel and unusual punishment includes protection against inhumane conditions of imprisonment. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To determine whether prison officials have violated a prisoner's Eighth Amendment rights, a court must analyze "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Id.*; *see also Wilson v. Seiter*, 501 U.S. 294, 298 (discussing Supreme Court decisions in Eighth Amendment cases and noting Eighth Amendment claims consist of objective and subjective components). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams*, 77 F.3d at 761 (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

With respect to a conditions-of-confinement claim, the subjective component is deliberate indifference—that is, prison officials act with a sufficiently culpable state of mind if the officials act with more than mere negligence but less than malice. *Id.*; *see also Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (stating that "deliberate indifference entails something more than mere negligence" but "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result"). More specifically, deliberate indifference occurs when prison officials were "aware of [the] facts from which the inference could be drawn that a substantial risk of serious harm exists," and the officials drew the inference. *Farmer*, 511 U.S. at 837. An extreme deprivation of a prisoner's rights

satisfies the objective component of a conditions-of-confinement claim. *Williams*, 77 F.3d at 761 (citing *Hudson*, 503 U.S. at 8–9).

Here, Defendants are entitled to qualified immunity because it was objectively reasonable for Defendants to conclude the method in which they restrained Plaintiff when he was outside his SMU cell did not present a substantial risk of serious harm and did not constitute an extreme deprivation of Plaintiff's rights. Nothing in the record indicates, and Plaintiff has not alleged, the method of restraint employed by Defendants posed any risk of harm or constituted an extreme deprivation of Plaintiff's rights; Plaintiff has merely alleged Defendants violated the applicable SCDC policy. Consequently, the Court concludes Defendants are entitled to qualified immunity with respect to Plaintiff's Eighth Amendment claim and recommends Defendants' motion for summary judgment be granted as to this claim.

**Equal Protection Claim**

The Equal Protection Clause of the Fourteenth Amendment prohibits states from denying any person equal protection of the laws. U.S. Const. amend. XIV, § 1. In the Fourth Circuit, a prisoner must demonstrate two elements to establish an equal protection claim:

> To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.

*Morrison*, 239 F.3d at 654. As the Supreme Court has determined that prison regulations are valid if they are reasonably related to legitimate penological interests, the requisite level

of scrutiny is the rational basis test rather than strict scrutiny, even if the disparate treatment implicates the prisoner's fundamental rights.  *Id.* at 654–55 (quoting *Turner*, 482 U.S. at 89).  Therefore, to be valid, the disparate treatment must be reasonable in light of the security and management concerns of the prison system.  *Id.* at 655.

Here, Defendants are entitled to qualified immunity because it was objectively reasonable for Defendants to conclude the method in which they restrained Plaintiff when he was outside his SMU cell was reasonable in light of the security concerns at PCI.  First, the relevant SCDC policy states that, at a *minimum*, Level 2 inmates will be restrained with security cuffs whenever exiting their cell.  [Doc. 1 at 3 ¶ 4; Doc. 23 at 4 ¶ 3; Doc. 55-2 ¶ 2.]  The policy prescribes only a minimum form of restraint; the policy does not proscribe a method of restraint more restrictive than security cuffs.  Therefore, the Court concludes it was objectively reasonable for Defendants to determine they had the discretion restrain Level 2 inmates in a manner that was more restrictive than the minimum described by the relevant SCDC policy.

Second, McCall averred the "procedures for restraints in SMU . . . were necessary for the security of the institution, officer safety and inmate safety."  [Doc. 55-2 ¶ 3.]  McCall explained that, in the past, inmates were able to slip out of handcuffs and assault staff members, but no such assaults have occurred under the existing restraint policy, which restrains SMU inmates with more than one pair of handcuffs.  [*Id.* ¶ 3–6.]  Further, McCall averred Plaintiff was not treated differently than any other Level 2 inmate at PCI.  [*Id.* ¶ 7.]  While Plaintiff contends Defendants have failed to substantiate their claim that inmates were slipping out of handcuffs and assaulting staff and that there are ways to secure handcuffs so that inmates cannot slip out of them [Doc. 58-1 at 2–3], Plaintiff's arguments

fail to demonstrate that it was not objectively reasonable for Defendants to restrain all Level 2 inmates at PCI in the same manner.  Nothing in the record indicates Defendants' actions were the result of intentional or purposeful discrimination against the SMU inmates at PCI. Accordingly, the Court concludes Defendants are entitled to qualified immunity with respect to Plaintiff's equal protection claim and recommends Defendants' motion for summary judgment be granted as to this claim.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Defendants' motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

January 25, 2012
Greenville, South Carolina